**TEXAS EMPLOYERS' INS. ASS'N v. SOTO et al. (No. 2036.)**

Court of Civil Appeals of Texas. El Paso.
May 5, 1927.

Rehearing Denied May 12, 1927.

1. **Marriage ☞50(5)—Evidence justified finding that defendant and deceased employee lived together as common-law husband and wife, authorizing compensation award to defendant.**

In proceeding to set aside an award of Industrial Accident Board in favor of defendants as surviving common-law wife and posthumous child of deceased employee, evidence *held* sufficient to support finding that defendant and employee mutually agreed to become husband and wife, with intention of living together for rest of their lives, and that they did live and cohabit together as husband and wife, authorizing award of compensation to defendant.

2. **Marriage ☞13—Common-law relationship of husband and wife requires living together pursuant to agreement to become husband and wife; "common-law marriage."**

Marital relation of husband and wife at common law requires mutual consent, express or implied, between parties to become then and thenceforth husband and wife pursuant to such consent, followed by living together in agreed relationship.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common-Law Marriage.]

3. **Master and servant ☞417(5)—Claimant's statement, filed before Industrial Accident Board, is not conclusive of compensation claim, in suit to set aside award.**

Written statement by claimant of compensation for death of common-law husband, filed with Industrial Accident Board, is not conclusive of her claim for compensation in suit by Employers' Insurance Association to set aside award of Industrial Board.

4. **Master and servant ☞417(5)—Trial on appeal from order of Industrial Accident Board is de novo.**

On appeal from order of Industrial Accident Board, trial is de novo; that is, anew from the beginning and governed by rules of such trials.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by the Texas Employers' Insurance Association against Petra Soto and another, in which defendants filed a cross-action. Judgment for defendants, and plaintiff appeals. Affirmed.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellant.

E. B. Elfers, of El Paso, for appellees.

WALTHALL, J. Texas Employers' Insurance Association brought this suit in the district court of El Paso county against Petra Soto and Toribio Rascon to set aside an award of the Industrial Accident Board of Texas, theretofore made by said board against the association, in favor of Petra Soto and Toribio Rascon, on the theory that they were, respectively, the surviving common-law wife and posthumous child of Toribio Rascon, Sr., alias Enrique Fuentes, deceased, who received injuries resulting in his death while in course of his employment as a servant of El Paso Ice & Refrigerator Company, in El Paso county, Tex., said employer carrying a workmen's compensation insurance policy with said association for the benefit of its employees.

Petra Soto and Toribio Rascon, by his guardian ad litem, filed their cross-action, and the court, pursuant to a special verdict of the jury, rendered judgment denying plaintiff's prayer to set aside the award of the board, and plaintiff has appealed to this court.

## Opinion.

As suggested by appellant in its brief, there is only one issue of fact in the case. If Petra Soto was the common-law wife of Toribio Rascon, Sr., at the time of his death, the judgment entered by the trial judge is correct; otherwise not.

The trial court submitted the only one issue of fact to the jury, as follows:

"Do you find from the evidence that on or about January or February, 1923, Petra Soto and Toribio Rascon mutually consented and agreed together with each other to become husband and wife, with the intention, for the rest of their lives, of living and cohabiting together as such, and that in pursuance of such agreement, if such agreement there was, they did professedly live and cohabit together as husband and wife?"

To which issue the jury answered, "Yes."

It is insisted by appellant that the evidence offered was not such as to justify the submission of the issue to the jury, and that the court should have given the requested peremptory charge directing the verdict in favor of the appellant association.

Petra Soto was the only witness who testified in the case. We quote from her testimony, on direct examination, as follows:

"My name is Petra Soto. I live on Virginia street, El Paso, Tex. I have lived here about 18 years. * * * I knew Toribio Rascon in his lifetime. * * * He died on the 29th, but I don't remember what month it was, 1924. * * * I had lived with him about 7 months before he died. * * * I was living, at the time, began living with him, on Kansas and Seventh, 811. I lived at that place prior to the time I began living with him. * * * I had known him for some time before I began living with him. * * * During that time, before I began living with him, I saw him frequently. As to how I came to go and live with him, we had sort of meeting affair there at the house where I was living in a tenement house, and he spoke to me about living together, and I told him I would

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

because he said we would live as husband and wife. I agreed to that. When he said that to me, why, he moved over to that place I was living before. He was working at the ice company at that time, and he continued to work at the ice company from that time on up to the time of his death. He lived the remainder of the time after he began living with me there up to his death at Kansas and Seventh, in the same house with me. He lived at the same house when he was killed, he was taken to the same house. As I said before, he promised to support me and my family and live with me; that is the agreement we went to. He did that from then on up to the time of his death; he complied with his agreement. He supported me from that on up to the time of his death. This boy I have with me is named Toribio Rascon. I think he was born on the 12th of November, I am not very sure, I think of the same year that Toribio Rascon was killed. Toribio is the father of the child. I think the child was born about two months and some days after Toribio Rascon was killed."

On cross-examination, Petra Soto said:

"I have two children. I have had three children (giving their ages). * * * Notal Aguillar was the father of the oldest child. I don't know where he is. I was never married to him, we lived together. Just lived together, just like Toribio Rascon and I lived together. * * * When I started living with him (Aguillar), I did not have an agreement with him that we would live together henceforth as husband and wife—that was just casual. * * * I first met Toribio Rascon during January, 1925, at a neighborhood meeting or party at my house. * * * Some days after that he began taking his meals at my house. He was already living there with me, but I did not want to tell his father about it. I began mending and washing his clothes. * * * He gave me his pay as he got it from the company. I probably made that statement to the Industrial Accident Board as a basis of my claim. * * * At that time I don't know what I did say. It is a fact he did pay me $30 a month for his meals and mending his clothes; he gave me his weekly pay. He had been sleeping at my house before February, 1925. He paid $8 rent, yes, sir; but he did not keep on paying me $30 a month as he did before. He afterwards gave me all of his pay. He kept paying me $30 a month. When he spoke to me about this, he told me we was to live as husband and wife. He told me we were going to live that way. I do not remember that I had that idea on the 2d day of September, 1925, when I put in my claim to the Industrial Accident Board. I have never been married to any man. I have had three children."

On redirect examination, witness, in speaking of Toribio Rascon, said:

"We went out in public together. We would go to picture shows, and would go to Juarez." Once they went together to visit her uncle and aunt. "He came to my house to live about the first of the year, 1925, and we immediately began living together as husband and wife when he moved over."

Without quoting the evidence further, it shows that the place occupied by Petra Soto and Toribio Rascon consisted of two rooms and in which lived Petra Soto, Toribio Rascon, Petra's mother, and Petra's two boys. Their ages are uncertain, and we will not undertake to state them.

Appellant read in evidence the certified copy of the certificate or claim which appellee presented to the Industrial Accident Board as the basis for her claim in this case for compensation.

[1] We have concluded that the evidence, extracts from which are copied above, is sufficient, in our opinion, to support the finding of the jury on the issue submitted and the judgment of the trial court based thereon.

[2] To constitute the marital relation of husband and wife at common law, as contended for by appellee, there must be a mutual consent or agreement, expressed or implied, between the man and the woman to become then and thenceforth husband and wife, and, pursuant to such consent or agreement, followed up by a living together in such agreed relationship. Such consent or agreement without a living together as husband and wife, or a cohabitation or living together without such agreement would not, in this state, constitute a common-law marriage. Grigsby v. Reib, 105 Tex. 597, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011; Schwingle v. Keifer, 105 Tex. 609, 153 S. W. 1132. There is nothing in the record to suggest either a secret agreement, or secret or clandestine living together.

Here the assumption of a marriage status; that is, a living together, the woman not going out to work as formerly, but remaining at home, openly performing the household duties, washing and caring for the man's clothes, the man, on his part, remaining in the home with the woman and her family, paying the rent of the place where they are living, and otherwise supporting the woman, her children, and her mother, turning his weekly pay check over to the woman from the time the relationship commenced until his death.

The only suggestion made by appellant is as to the agreement to the relationship as husband and wife. The Supreme Court held that the charge of the trial court in Berger v. Kirby, 105 Tex. 611, 153 S. W. 1130, 51 L. R. A. (N. S.) 182, was practically correct. In that case the charge was:

"A common-law marriage exists when a man and woman enter into an agreement to become husband and wife and in pursuance of such agreement do live together and cohabit as husband and wife and hold each other out to the public as husband and wife. Such agreement to become husband and wife may be express or implied; an express agreement is where the parties thereto expressly agree, and an implied agreement is where the parties with reference to the subject-matter is such as to induce the belief in the minds of the contracting parties that they intend to do that which their acts indicate they have done."

Judge Simpkins, in his work on Contracts and Sales, says:

"All real contracts grow out of intention, which may be expressed or implied. When expressed, it leaves the court the simple duty of construing its terms as expressed."

As to implied contracts, the same author says:

"There may be no direct expression of intention, but it may be inferred from the acts or conduct of the parties, which may as clearly indicate intention as if expressed in words; that is, the mutual purpose to make a contract is shown."

We have examined many definitions of express and implied contracts, but we think it might be said that "all definitions are but half the truth."

[3, 4] It is insisted by appellant that the statement, in writing, made by Petra Soto on September 2d, 1925, and filed with the Industrial Accident Board as the basis of her recovery, and offered in evidence by appellant on the trial, is conclusive of her claim for compensation. We do not concur in that contention. On appeal from the order of the board, the trial is de novo; that is, anew from the beginning and governed by rules of such trials.

The case is affirmed.