**PRUDENTIAL FIRE INS. CO. v. UNITED GAS CORPORATION.**

No. 5695.

Court of Civil Appeals of Texas. Amarillo.

Dec. 17, 1945.

518

R. R. Donaghey, of Vernon, and W. T. Perkins, of Quanah, for appellant.

Bert King, of Wichita Falls, and O. L. Bell, of Quanah, for appellee.

BOYCE, Justice.

The original opinion in this case was handed down on November 19, 1945. Because of matters raised in appellant's motion for rehearing, that opinion is withdrawn and the following is substituted:

The appellant (plaintiff) will hereafter be called the Insurance Company, and the appellee (defendant), the Gas Company. The Insurance Company, as the conventional subrogee of the owner of the Henderson business building in Quanah, brought this suit to recover from the Gas Company $1275 which the Insurance Company had paid to the owner of the Henderson Building on account of damage to the building resulting from a gas explosion therein. The case was tried to a jury, which answered all the issues submitted in favor of the Gas Company and judgment was entered accordingly. The points upon which the appeal is predicated have to do with the admission of certain testimony of the Gas Company's bookkeeper, the court's definition of negligence and the restriction of Insurance Company's counsel to such definition in argument to the jury, improper argument and side-bar remarks of the Gas Company's counsel, jury misconduct, and the refusal of the Insurance Company's motion for judgment notwithstanding the verdict. The Gas Company presents cross-assignments of error based on the overruling of its motion for a peremptory instruction. We shall first consider the cross-assignments.

The Henderson Building is of stone construction; its south wall consists of two layers, each about nine inches thick; the foundation is of the same material and extends about thirty-six inches below the surface. The building faces east on Main Street in Quanah. Immediately to the south of the Henderson Building is the Piggly-Wiggly Building. Its rear wall is about ten or fifteen feet east of the rear wall of the Henderson Building. Adjoining the Piggly-Wiggly Building on the west and the Henderson Building on the south is a concrete apron about six feet in width extending across the rear of the Piggly-Wiggly Building. This apron is used as a loading platform for trucks which serve the Piggly-Wiggly Grocery in the conduct of its business. The Gas Company supplies both buildings with gas for heating purposes from a main located in the alley. The service line to the Henderson Building enters that building at its northwest corner. The service line to the Piggly-Wiggly Building is buried ten or eleven inches underground and extends along the south wall of the Henderson Building to the concrete apron; at this point there is an elbow joint from which a pipe rises to the meter through which gas used by the grocery store is measured.

For several years prior to the trial the Henderson Building had been occupied by Leja Richardson who carried on a ladies' ready-to-wear and shoe business. On the morning of January 18, 1944, T. R. Jacobs, a salesman for Richardson, acting on reports of some of the women employes that they smelled gas in the store, undertook to test the heater connections and gas pipes in the store for leaks. He performed this project with lighted matches. When he reached a connection of two house lines several feet above the floor near the rear portion of the south wall, an explosion occurred which caused the damage to the building paid for by the Insurance Company under its policy. The damage consisted of blown-out windows, doors, blown-down partitions, partial collapse of a balcony in the rear of the store, timbers blown through the metal ceiling, and buckled floors above the store gas pipes which were broken and twisted. On the second day after the explosion an underground leak was discovered in the riser from the Piggly-Wiggly Building service line to the meter. There was no connection between the riser and the broken and twisted pipes in the building except through the main in the alley.

The Insurance Company alleged that the explosion was caused by gas which had escaped from the subsurface leak in the riser, seeped through the cracks and crevices in the wall of the Henderson Building, and accumulated therein; that the Gas Company was negligent in installing the Piggly-Wiggly Building service line so close to the Henderson Building; that had the serv-

ice line been farther from the Henderson Building escaping gas would have gone into the air instead of following the line of least resistance into the Henderson Building. The Gas Company answered that if the service pipe was leaking, it was because of the act of a third party and the Gas Company had no notice or knowledge of the leak. To this the Insurance Company replied in a supplemental petition that if the leak was due to the act of a third party it was because of the Gas Company's failure to place a safeguard around the riser which was located in the grocery store loading zone.

■ In our opinion, the situation confronting the Gas Company in the installation of the service line was analogous to that facing those who use electricity for profit in the construction of their lines. The electricity companies are not insurers. In installing their lines they are required to use that degree of care which a person of ordinary prudence would use under like circumstances. Citizens' R. Co. v. Gifford, 19 Tex.Civ.App. 631, 47 S.W. 1041, writ of error refused; Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S. W. 640, 49 L.R.A. 771, 77 Am.St.Rep. 898; Smith v. Texas Electric Service Co., Tex. Civ.App., 85 S.W.2d 808, writ of error dismissed.

No testimony was offered to the effect that there were any cracks or crevices in the wall below the surface of the ground or that the wall below the surface was more porous than the soil in which the pipe was buried. There was no testimony tending to show that the line of least resistance for gas escaping from the service line was through the wall of the Henderson Building rather than the overlying soil. There was testimony that at the time of the trial there were crevices in the mortar joints in the wall of the building at points from two to four feet above the ground and that a wire could be inserted in such crevices.

■ Under these facts, to charge the Gas Company with failure to exercise due care in installation of the service line, it must have anticipated that escaping gas would, after rising from the soil into the air, follow the wall to the crevices and then change its upward course in order to enter such crevices. We do not believe a man of ordinary prudence in locating the service pipe would have anticipated such a sequence of events. We therefore hold that the evidence failed to present any issue of negligence in the location of the service line to the Piggly-Wiggly Building.

At the time the leak was discovered, the riser to the Piggly-Wiggly Building meter was out of alignment and leaned to the east; at about bumper height above the ground there was a dent in the pipe. The soil around the riser was excavated and it was found that the pipe was cracked along one of the threads just above the elbow joint and gas was escaping therefrom. The inference to be drawn from the position of the pipe, the dent in it at the time of the excavation, and the use of the area behind the Piggly-Wiggly store by trucks is that the pipe was broken as the result of contact with a truck bumper.

■ If this testimony raises an issue of negligence on the part of the Gas Company in failing to protect the riser, submission of such an issue to the jury was not authorized, because of lack of proper written pleadings. The supplemental petition was not sufficient to set up a cause of action based on the Gas Company's negligence in failing to provide a safeguard for the riser. Rules 67, 277, and 279, Texas Rules of Civil Procedure; Foxworth-Galbraith Lumber Co. v. Southwestern Contracting Corporation, Tex.Civ.App., 165 S.W.2d 221, writ of error refused for want of merit; Humble Oil & Refining Co. v. Webb, Tex.Civ.App., 177 S.W.2d 218, writ of error refused for want of merit; Service Parts Co., Inc. v. Bizzell, Tex.Civ.App., 120 S.W.2d 919.

The Insurance Company further alleged that it did not know whether the leak in the line resulted from age, rust, or some other cause or how long prior to the explosion the leak developed, but that had the Gas Company exercised proper care, it would have known of the escaping gas in time to prevent the explosion; that the Gas Company was negligent in failing to discover the leak, in failing to make proper inspection of the line, and in failing to repair the leak.

■ The Insurance Company offered no testimony from which it might be inferred that the break in the pipe was due to age, rust, or some other defect, although its adjuster was present when the break in the riser was discovered and had an opportunity to observe the pipe.

■ The evidence being insufficient to raise the issue that the leak was due to

defects in the pipe, it became necessary for the Insurance Company to show that the Gas Company had notice of the leak in the service line or of facts from which a duty arose to inspect. Lane v. Community Natural Gas Co., 133 Tex. 128, 123 S.W.2d 639.

The witness Jacobs testified that at intervals for about a month before the explosion Richardson's women employes had reported smelling gas in the store. None of these reports was passed on to the proprietor of the store or to the Gas Company. Immediately after the explosion the Gas Company cut off the gas to the Henderson Building and began a search outside the building for leaks. No leak was found that day and the search continued through the next day without success. At about eleven o'clock that night Richardson, his wife, and the Insurance Company's adjuster discovered the odor of gas coming through a crack on the inside of the store wall. This crack was four or five feet above the floor and about a foot west of the junction of the rear wall of the Piggly-Wiggly Building and the south wall of the Henderson Building. The Gas Company was notified and on the next day after a short search its employes discovered the broken pipe.

■■ Although it may be inferred that the leak existed prior to the explosion, the Insurance Company failed to offer any testimony that the Gas Company had actual notice thereof. The testimony that some of the women employes had reported smelling gas at intervals for a month prior to the explosion was hearsay. Such evidence, though admitted without objection, is incompetent and cannot form the basis of a finding of fact that the leak had existed for a sufficient time to have been discovered in the course of proper inspections. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628. Nor is there any other testimony to support such a finding.

The Insurance Company's witnesses did not detect any odor of gas in the open at the time the excavation was made around the riser pipe. There is no testimony that the riser pipe was out of alignment prior to the time the excavation was made although it might be inferred that such condition existed prior to the explosion. The Insurance Company offered no testimony whatever relative to inspections by the Gas Company.

■ If it be presumed that the leak existed prior to the explosion, to hold the Gas Company liable there must be another presumption, that the Gas Company failed to make proper inspections or that it had notice of facts from which arose the duty of making an inspection to discover the leak. A presumption of fact cannot be founded upon facts presumed. Lone Star Gas Co. v. Eckel, Tex.Civ.App., 110 S.W.2d 936, writ of error dismissed.

■ The Insurance Company had the burden of proving facts showing the negligence charged by it. Kelley v. Burlington-Rock Island R. Co., Tex.Civ.App., 100 S.W.2d 164, writ of error refused. The facts proved, in our opinion, fail to show the negligence alleged. We therefore hold that the Gas Company's request for a peremptory instruction should have been granted.

■ The Insurance Company having failed to prove its case, any errors committed in admitting the testimony of the bookkeeper to the effect that the weather was warmer in the month preceding the explosion than in the same month of the following year and that the gas bill of the Richardson store was larger in the warmer month was harmless. Such testimony was offered in support of the Gas Company's defensive theory that the explosion was caused by leaks in the pipes in the building. Texas-Mexican R. Co. v. Uribe, 85 Tex. 386, 20 S.W. 153.

Because the case should not have gone to the jury, any errors which may have occurred in its submission are harmless. Schwingle v. Keifer, 105 Tex. 609, 153 S.W. 1132; Southern Old Line Life Ins. Co. v. Mims, Tex.Civ.App., 101 S.W.2d 396, writ of error dismissed.

The judgment is affirmed and the appellant's motion for a rehearing is overruled.